**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 21, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DUSTIN ROBBINS and MELISSA
GILLUM, as parents and next friends
of RENEE DAWN ROBBINS, a
deceased minor,

     Plaintiffs-Appellees,

v.

STATE OF OKLAHOMA, ex rel.,
DEPARTMENT OF HUMAN
SERVICES; HOWARD H.
HENDRICK; DEBORAH CROSSLIN;
NANCY VONBARGEN; LINDA
HUGHES; JOHN DOES 1 THROUGH
5; JANE DOES; CASEY FOREMAN,
in his/her capacity acting under color
of state law; CARLA BETH
MCKINNEY, an individual, d/b/a
CARLA'S DAYCARE, and/or
MCKINNEY'S DAYCARE,

     Defendants-Appellants.

No. 07-7021

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CIV-06-364-FHS)**

---

Richard W. Freeman, Jr., Assistant General Counsel, Department of Human
Services, Oklahoma City, Oklahoma (Joseph W. Strealy, Assistant General
Counsel, Department of Human Services, Oklahoma City, Oklahoma, with him on
the briefs), for Defendants-Appellants.

Christine Cave, Abowitz, Timberlake & Dahmke, P.C., Oklahoma City, Oklahoma (Joe Carson, Buxton & Carson, PLLC, Oklahoma City, Oklahoma, with her on the briefs), for Plaintiffs-Appellees.

---

Before **McCONNELL**, **BALDOCK**, and **GORSUCH** Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

This case arises from the tragic death of an eight month old infant, Renee Dawn Robbins, the child of Dustin Robbins and Melissa Gillum. In 2003, Renee's parents sought financial assistance and other social services from the Oklahoma Department of Human Services ("DHS"). Employees of DHS informed Mr. Robbins and Ms. Gillum that Carla Beth McKinney operated a licensed and privately-owned daycare center in Tahlequah, Oklahoma, where they might obtain state subsidized care for Renee. Plaintiffs further allege that employees of DHS "informed" them that "the McKinney Daycare was the *only* daycare to which Renee could attend due to financial considerations." Comp. ¶¶ 19 & 20 (emphasis added). Following this consultation, Renee's parents placed her in Ms. McKinney's daycare where she suffered blunt force trauma to the head resulting in her death. The Chief Medical Examiner listed the manner of death as homicide; the state filed criminal charges of first degree murder against Ms. McKinney.

Renee's parents originally filed suit against the State of Oklahoma Department of Human Services, five named employees of DHS in their individual capacities, ten unnamed employees of DHS in their individual capacities, Carla Beth McKinney, and the McKinney Daycare, in the United States District Court for the Eastern District of Oklahoma on June 9, 2005. That case was voluntarily dismissed by the plaintiffs on September 7, 2005. This case was filed by Mr. Robbins and Ms. Gillum on September 7, 2006, against the same parties seeking damages and other relief under 42 U.S.C. § 1983 for alleged violations of Renee's constitutional rights and various torts in connection with Renee's death.

The Oklahoma Department of Human Services, Howard H. Hendrick, Nancy VonBargen, and Casey Foreman filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The court granted the defendants' motion to dismiss against DHS on the basis of sovereign immunity, but denied the motion with respect to the individual defendants. Hendrick, VonBargen, and Foreman filed a motion to reconsider. The court granted the motion with regard to the prayer for declaratory relief, but once again denied the individual defendants' qualified immunity claim on the prayer for damages because the court found that "it ha[d] insufficient information," and therefore that some discovery was necessary to determine whether qualified immunity shielded the defendants from suit. *Robbins v. Oklahoma Dep't of Human Serv.*, No. 06-CV-367, 2007 WL 756694, *1 (E.D.Okla., March 7, 2007).

-3-

Defendants Hendrick, VonBargen, and Foreman appeal the partial denial of their motion to dismiss, and ask us to consider whether the plaintiffs have adequately stated a claim on which relief may be granted and whether they are entitled to qualified immunity. We reverse the district court's denial of defendants' motion to dismiss, and instruct that the suit be dismissed for failure to state a claim upon which relief can be granted.

**I.**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." At the time when the district court denied the motion to dismiss, this and other courts generally embraced a liberal construction of the pleading requirement, derived from *Conley v. Gibson*: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957) (emphasis added); *see, e.g. Kikumura v. Osagie*, 461 F.3d 1269, 1294 (10th Cir. 2006). Under this construction of Rule 8(a), a complaint containing only conclusory allegations could withstand a motion to dismiss unless its factual impossibility was apparent from the face of the pleadings – that is, a complaint was immune from dismissal if it left open the possibility that a fact not alleged in the complaint could render the complaint sufficient. Under this construction of the Rules, the district court in this case was

probably correct when it concluded that it should deny the motion to dismiss when "it ha[d] insufficient information" to tell whether the complaint stated a claim or not. *Robbins*, 2007 WL 756694 at *1.

Just two months after the district court decision, however, the Supreme Court handed down *Bell Atlantic Corp. v. Twombly*, rejecting the "no set of facts" language of *Conley* and announcing a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." 127 S. Ct. 1955, 1974 (2007). Under this revised standard, as we explained in *Ridge at Red Hawk, L.L.C. v. Schneider*:

> the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.

493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S. Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

We are not the first to acknowledge that the new formulation is less than pellucid. *See Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007) (referring to the "conflicting signals" in the *Twombly* opinion); *Phillips v. County of Allegheny*, 2008 WL 305025, at *3 (3d Cir. Feb. 5, 2008) (calling the opinion "confusing").

As best we understand it, however, the opinion seeks to find a middle ground between "heightened fact pleading," which is expressly rejected, *Twombly*, 127 S. Ct. at 1974; *see also id.* at 1964 (a complaint "does not need detailed factual allegations"), and allowing complaints that are no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," which the Court stated "will not do." *Id.* at 1965.

The most difficult question in interpreting *Twombly* is what the Court means by "plausibility." The Court states that the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. But it reiterates the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 1965 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Thus, "plausible" cannot mean "likely to be true." Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Id.* at 1974. The

allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.[1]

This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 1965 n.3. *See Airborne Beepers & Video, Inc. v. AT&T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n.10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . . . would have little idea where to begin." *Id.*

---

[1] For example in *Erickson v. Pardus*, decided immediately after *Twombly*, the Court held that a prisoner's *pro se* complaint stating that the doctor's decision to withhold his prescribed Hepatitis C medication was "endangering his life" and causing "continued damage to [his] liver," was a sufficient allegation of substantial harm to survive a motion to dismiss. 127 S. Ct. 2197, 2199 (2007). Although the allegations made by the petitioner were general, they were not overly broad. If proven, such harm would in all likelihood be sufficiently substantial to provide a basis for relief, and therefore, that aspect of the complaint crosses the line between "possibility and plausibility." *Twombly* at 1966.

**II.**

The Third Circuit has noted, and we agree, that the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context: "Context matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case. . . ." *Phillips*, 2008 WL 305025, at *4. A simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time. *See* Form 9, Complaint for Negligence, Forms App., Fed. Rules Civ. Pro., 28 U.S.C. App., p. 829 (discussed in *Twombly*, 127 S. Ct. at 1970–71 n.10). The complaint in *Twombly* was inadequate because the plaintiff failed to plead any facts to show "contract, combination . . . or conspiracy, in restraint of trade" beyond a bare allegation of parallel conduct that could be explained as identical but independent action. Sherman Act § 1, 15 U.S.C. § 1. Given that the complaint encompassed scenarios under which the defendants conspired to engage in parallel conduct *and* those in which they did not, the Court found that the likelihood that the plaintiff would be entitled to relief, even if all of the allegations were true, fell short. To allow such a complaint to proceed would impose the cost of discovery on the defendants for no plausible basis. "[I]t is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of

discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support a § 1 claim." *Twombly*, 127 S. Ct. at 1967 (brackets in original) (quoting *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)) (further internal citations omitted).

The context of this case is a claim of qualified immunity by state officials or employees who were sued for damages in their personal capacity for injuries to a child inflicted by a third party. Qualified immunity exists "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.' " *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982)). Defendants are permitted to appeal from the denial of a motion to dismiss on qualified immunity grounds precisely to spare them the ordeal of discovery if the complaint fails to allege a constitutional violation or if the alleged violation was not clearly established. *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996). To "nudge their claims across the line from conceivable to plausible," *Twombly*, 127 S. Ct. at 1974, in this context, plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made.

This does not mean that complaints in cases subject to qualified immunity defenses must include "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997). In *Currier* we found this heightened pleading standard superceded by the Court's decision in *Crawford-El v. Britton*, 523 U.S. 574 (1998). *Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001). *Twombly*, too, rejects a heightened pleading standard. 127 S. Ct. at 1973-74. However, the complaint must meet the minimal standard of notice pleading as articulated by the Court in *Twombly*. Although we apply "the same standard in evaluating dismissals in qualified immunity cases as to dismissals generally," *Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200 (10th Cir. 2007), complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity "at the earliest possible stage of a litigation."[2]

---

[2]In addition, we note that a trial court is under an obligation to "exercise its discretion in a way that protects the substance of the qualified immunity defense." *Crawford-El*, 523 U.S. at 597. Trial courts are equipped with means, such as ordering a reply to defendant's answer under Rule 7(a) or granting defendant's motion for a more definite statement under Rule 12(e), to "insist that the plaintiff put forward specific, nonconclusory factual allegations," *id.* at 598, to assist the court in determining whether qualified immunity ought to be imposed at this earliest possible stage or whether the complaint is sufficiently plausible that it

(continued...)

*Anderson*, 483 U.S. at 646 n.6; *Harlow*, 457 U.S. at 818. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S. Ct. at 1965 n.3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

## A. Danger Creation

Count I of Mr. Robbins' and Ms. Gillum's complaint, requesting damages for violations of Renee's due process rights, is inadequate both for failure to provide fair notice and because, even if we take all well-pleaded facts in the complaint as true, the plaintiffs have failed to present a plausible right to relief. We reiterate that "[c]ontext matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case." *Phillips*, 2008 WL 305025, at *12. In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state. *See Twombly*, 127 S. Ct. at 1970-71 n.10.

_____

[2](...continued)
merits imposition of the burdens of discovery on state actors.

Count I of Mr. Robbins' and Ms. Gillum's complaint fails to isolate the allegedly unconstitutional acts of each defendant, and thereby does not provide adequate notice as to the nature of the claims against each. For example, paragraph 28 of the complaint alleges that "Defendants" . . . "instruct[ed] the Plaintiffs to place Renee Dawn Robbins in a specific Daycare"; "Defendants" . . . "assert[ed] control over such Daycare"; and "Defendants" . . . failed to "protect and supervise the child . . . ." The three defendants named in this appeal are Howard H. Hendrick, the Director of DHS for the State of Oklahoma; Nancy Vonbargen, a local DHS social worker; and Casey Foreman, another local DHS social worker. Other defendants named in the complaint include Ms. McKinney, two additional named DHS social workers, and ten other unnamed DHS social workers or supervisors. Presumably, the allegedly tortious acts committed by Mr. Hendrick as the Director of DHS, Ms. McKinney as the private owner and operator of the daycare where Renee was killed, and the individual social workers in Tahlequah, are entirely different in character and therefore are mistakenly grouped in a single allegation. The complaint makes no mention of which if any of these defendants had direct contact with Renee and her parents, and for those defendants who had no direct contact, how they might be individually liable for deprivations of Renee's constitutional rights.

We need not speculate, because the burden rests on the plaintiffs to provide fair notice of the grounds for the claims made against each of the defendants.

Given the complaint's use of either the collective term "Defendants" or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir., May 31, 2001) (granting a motion to dismiss for failure to provide fair notice under Rule 8 in part because "[t]he complaint failed to differentiate among the defendants, alleging instead violations by 'the defendants'"); *Median v. Bauer*, 2004 WL 136636, *6 (S.D.N.Y., Jan. 27, 2004); *Lane v. Capital Acquisitions and Mgmt. Co.*, 2006 WL 4590705, *5 (S.D.Fla., April 14, 2006).

In addition to the failure of Count I to satisfy the standard of fair notice required by Rule 8, the plaintiffs do not allege facts sufficient to render their claim plausible. Setting aside the numerous conclusory allegations, plaintiffs allege that defendants (we cannot discern which ones): "instructed Plaintiffs to place Renee Dawn Robbins in a specific Daycare"; "informed Melissa that the McKinney Daycare was the only Daycare to which Renee could attend due to financial considerations"; "were or should have been aware of the past nature of McKinney's personal background"; "knew that Dustin Robbins and Melissa Gillum were relying upon DHS to provide them with a safe environment for Renee"; "fail[ed] to take steps to ensure that Renee was placed in a safe environment"; "lulled the Plaintiffs into a false sense of security about Renee's

welfare"; "failed to correct the misimpressions that the DHS generated report of available Daycare facilities engendered"; and "continued to place children in [Ms. McKinney's] custody . . . instead of revoking [her] license." Comp. ¶¶ 19–21, 23, 30.

Plaintiffs claim that these factual allegations, if taken as true, show a violation of Renee's due process rights under a theory of "danger creation." In general, state actors may only be held liable under § 1983 for their own acts, not the acts of third parties. *DeShaney v. Winnebago County of Dep't of Social Services*, 489 U.S. 189, 197 (1989). The "danger creation" exception to this rule applies only when "a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001). To state a prima facie case, the plaintiff must show that (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience. *Ruiz v. McDonnell*, 299 F.3d 1173*,* 1182–83 (10th Cir. 2002).

*DeShaney* holds that the state has no affirmative obligation under the Due Process Clause to protect "the interests of life, liberty, and property of its citizens

against invasion by private actors." 489 U.S. at 195. Therefore, the defendants cannot be held liable for their failure to protect Renee from harm, absent some prior affirmative act that incurred a duty to protect. *Graham v. Indep. School Dist. No. I-89*, 22 F.3d 991, 995 (10th Cir. 1994) ("Inaction by the state, in the face of a known danger is not enough to trigger . . . an affirmative duty to protect."). The mere "fail[ure] to take steps to ensure that Renee was placed in a safe environment" is insufficient as a matter of law to result in liability. Comp. ¶ 21. That defendants provided Renee's parents with a computer generated list of licensed daycare providers in the locality is also insufficient to impose liability, because Renee's parents retained legal custody of Renee and exercised their independent choice in opting to place Renee in subsidized daycare. Plaintiffs' only claims that may escape the sweep of *DeShaney* are: (1) that the defendants are liable for danger creation for continuing to license Ms. McKinney's facility, leading to her inclusion as a licensed provider on the computer generated list provided to Renee's parents; and (2) that defendants provided affirmative representations and assurances as to the quality of care that Renee would receive at the McKinney Daycare.

We refused to impose liability for danger creation on the basis of negligence in licensing in *Ruiz v. McDonnell*, 299 F.3d 1173, 1183 (10th Cir. 2002). In *Ruiz*, we determined that negligence in licensing was not a sufficiently affirmative act under the standard set by *DeShaney* because it did not pose an

immediate threat of harm and was directed at the public in general, rather than the defendants specifically. The same reasoning applies here, because the failure of DHS and its employees to revoke Ms. McKinney's license, even if they had the authority to do so, would be directed at the public in general rather than at Mr. Robbins, Ms. Gillum, and Renee specifically. *Id.* Furthermore, there is no allegation in the complaint that the named DHS employees were responsible for licensing either at the time Ms. McKinney's facility was originally licensed, or now. Plaintiffs therefore may not bring a claim of danger creation based on the state's failure to revoke Ms. McKinney's license.

The plaintiffs attempt to distinguish these circumstances from those presented in *Ruiz*, claiming that the provision of a list of *one* subsidized daycare service to Renee's parents was an affirmative act directed specifically towards the plaintiffs sufficient to impose a duty to protect because the list withdrew the element of choice from Mr. Robbins' and Ms. Gillum's decision to place Renee with Ms. McKinney. First, we note that if we were to accept this theory, every claim for the violation of due process rights of a child receiving subsidized daycare in a county that offered only one such daycare would advance to the summary judgment stage. Furthermore, plaintiffs do not allege sufficient facts to render their claim plausible. Plaintiffs do not allege that the list omitted other local subsidized daycare centers, or was otherwise inaccurate, and make no specific allegations aside from the original licensing of the McKinney Daycare

and the provision of an accurate list of local subsidized daycare centers to Renee's parents, that could qualify as an affirmative act under the "danger creation" doctrine. Given that the preponderance of imaginable circumstances encompassed by the complaint would be subject to the *Ruiz* bar to liability because the only affirmative act alleged is a negligent licensing decision, this claim fails to satisfy the *Twombly* plausibility standard absent specific factual allegations of additional affirmative acts by the individual defendants. Because we have no duty to "conjure up unpleaded facts that might turn a frivolous claim . . . into a substantial one," *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976), we find no basis for holding the defendants liable for the unfortunate fact that in this circumstance, there were no good choices for Renee and her parents.

The complaint also alleges that the employees of DHS "lulled the Plaintiffs into a false sense of security about Renee's welfare" and "did nothing to correct the misimpressions that the DHS generated report of available Daycare facilities engendered," Comp. ¶ 23, thereby inducing Renee's parents to place her with Ms. McKinney and resulting in her exposure to danger. The Ninth Circuit, in *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992), imposed liability for danger creation when the state as employer misrepresented to a nurse employed in a state correctional facility that she would not work with violent sex offenders. We too have supposed, in dicta, that if the state "affirmatively misleads an employee of the substantial risks in the workplace, that action may give rise to § 1983 liability."

*Uhlrig v. Harder*, 64 F.3d 567, 575 (10th Cir. 1995). However, we need not decide here whether to extend the "danger creation" theory to misrepresentations made outside of the context of the state as employer, because the plaintiffs do not allege that defendants made any affirmative statements regarding the quality of the McKinney Daycare. The allegations of "lulling" and "doing nothing" do not give rise to a reasonable expectation of relief, given that *DeShaney* requires an affirmative act before imposing liability. Therefore, although we might imagine affirmative acts that could be described as "lulling," without more specificity, plaintiffs "have not nudged their claims across the line from conceivable to plausible. . . ." *Twombly*, 127 S. Ct. at 1974.

Because we find that the plaintiffs failed to state a claim for violation of Renee's due process rights on which relief can be granted, we likewise find that the plaintiffs have failed to adequately plead supervisory liability. We also add that Count III of the complaint pertaining to supervisory liability contains almost no allegations that are neither conclusory nor vacuous. Once again the defendants are left without notice as to what particular actions are alleged as grounds for their liability as supervisors who approved, authorized, or ratified unconstitutional action by their inferiors.

### B. Equal Protection

Plaintiffs' final claim in Count IV of the complaint alleges a violation of Renee's rights under the Equal Protection Clause:

> Defendants Hendrick and/or Crosslin and/or Vonbargen and/or Hughes and/or Foreman and/or John Does 1 through 5 and/or Jane Does 1 through 5 treated the Plaintiff, Renee Dawn Robbins differently from similarly situated children on the basis of the financial ability and ethnicity of the Plaintiff and her mother and father, or at least without any rational basis. Specifically, said Defendants disregarded or discounted McKinney's alleged abuse and neglect of prior children on the ground that her behavior was not severe enough to warrant concern and fully acceptable within Native American families, and that the concerns expressed by other observers flowed from "cultural biases" and "ethnocentric viewpoints." Had said Defendants applied race-neutral and economically neutral standards to the social work performed in the Plaintiffs household, Defendants reports [sic] would have objectively identified the serious and imminent dangers facing the child — and, as a result, other interested observers would have taken appropriate measures to protect the child. Instead, the differential treatment the child received from said Defendants enabled Carla Beth McKinney to exercise complete dominion over Plaintiff Renee Dawn Robbins, and ultimately to inflict serious injury and death upon her.

Comp. ¶ 52. Again, this section of the complaint fails to differentiate among individual defendants and specify which defendants are alleged to have taken which particular actions. However, the more serious notice problem arises because the plaintiffs' open-ended allegations provide no suggestion as to what the grounds for an equal protection violation might be: whether Ms. McKinney is alleged to have treated Native American children in her care differently from other children; whether DHS is alleged to have refused to investigate complaints against Ms. McKinney because her clientele were all or mostly Native American; whether DHS is alleged to have treated Native American children differently by placing them with Ms. McKinney, a known child abuser; or some other

-19-

imaginable set of facts.  To make matters worse, none of these possible interpretations comfortably comport with the allegation that the defendants "treated the Plaintiff, Renee Dawn Robbins differently from similarly situated children," Comp. ¶ 52, given that there is no explanation of the characteristics of these similarly situated children and how they were allegedly treated differently than Renee.

To cure the notice and plausibility problems with their equal protection claim, plaintiffs must provide additional facts to show their grounds for relief.  As it stands, the complaint encompasses a broad range of imaginable circumstances, only some of which, if any, would entitle the plaintiffs to relief and therefore, "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 127 S. Ct. at 1966.

### III.

We **REVERSE** the judgment of the district court, and **REMAND** with instructions to **DISMISS** the complaint without prejudice for failure to state a claim on which relief can be granted.