**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

PAMELA A. PHILLIPS,

     Plaintiff-Appellee,

v.

FRED BELL, also known as Jeff
Bell; ANDREW LLUBERES; and
JOHN DOES 1 through 10,

     Defendants-Appellants.

No. 08-1420
(D.Ct. No. 1:07-CV-00604-WYD-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **O'BRIEN** and **BRORBY,** Circuit Judges, and **DOWNES**, District Judge.[**]

_____

     Appellants Fred Bell, also known as Jeff Bell, and Andrew Lluberes

(together referred to as Appellants) appeal the district court's denial of their

motion to dismiss, in favor of Appellee Pamela Phillips on her *Bivens* action[1]

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] Honorable William F. Downes, U.S. District Court Judge, District of Wyoming, sitting by designation.

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

against them for alleged violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 (hereafter referred to as the Federal Wiretap Act or the Act). Exercising our jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I. Factual Background

This case concerns whether Appellees – employees of the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) – are entitled to dismissal of the complaint against them under Federal Rule of Civil Procedure 12(b)(6) and on qualified immunity grounds for their alleged violations of the Federal Wiretap Act regarding their disclosure of telephone recordings between Ms. Phillips and another person who recorded those conversations without her permission. Specifically, Ms. Phillips alleges in her Second Amended Complaint (complaint) that in November 2005, ATF agents arrested Ronald Young in Florida on charges pertaining to an outstanding Colorado warrant. Subsequent to his Florida arrest and interview, Mr. Young consented to a search of four Broward County, Florida locations, including an apartment, a motel room, a motor vehicle, and a storage facility, where agents seized, among other things, numerous recorded telephone conversations between Mr. Young and Ms. Phillips which he recorded without her consent.

According to Ms. Phillips's complaint, the ATF agents who obtained the recordings disclosed and released copies of the seized recordings of her oral communications to numerous federal and state law enforcement officers, including Agent Bell, who is employed with the ATF in Arizona. She alleges that on September 5, 2006, Agent Bell disclosed the contents of the recordings to other law enforcement officers who provided sworn affidavits identifying the voices on the recordings as belonging to Mr. Young and Ms. Phillips. Ms. Phillips further alleges that on the next day, September 6, 2006, Agent Bell caused the contents of the recordings to be "disclosed ... and used in public documents," which the parties have since clarified are a search warrant for her home and the supporting affidavits identifying the participants' voices. The complaint further alleges Agent Bell participated in the September 2006 search of her home in Aspen, Colorado, as apparently supported by the search warrant and affidavits attached thereto. While the complaint fails to disclose the contents of the telephone recordings, the parties have clarified the search warrant and affidavits discussing their contents implicate Ms. Phillips in the murder of her ex-husband, who was killed by a car bomb in Arizona in 1996. They also acknowledge, for the purpose of this appeal, that the recorded conversations indicate she agreed to pay Mr. Young to murder her ex-husband, but the timeliness of her payments to him was in dispute. However, no allegation in the complaint references these circumstances.

Besides alleging Agent Bell wrongly disclosed the contents of the recordings to other law enforcement officers for the purpose of searching her home, Ms. Phillips alleges Agent Bell disclosed to or otherwise assisted an ATF Public Affairs employee, Mr. Lluberes, who was located in Washington, D.C., in the disclosure of the recorded conversations to seven Colorado media outlets, including major newspaper agencies and television news network affiliates. Finally, she alleges Agent Bell disclosed and used the contents of the recorded conversations during an interview with an unidentified private Aspen citizen.[2]

## II. Procedural Background

Based on the facts alleged, Ms. Phillips filed the instant *Bivens* action against Agent Bell and Mr. Lluberes, individually, alleging they violated her rights under the Fourth Amendment and the Federal Wiretap Act. In so doing, she alleges Mr. Young recorded her:

> oral telephone communications without [her] knowledge and prior consent specifically for the purpose of committing a criminal or tortious act, including without limitation, invasion of privacy, extreme and outrageous conduct, intentional infliction of emotional distress, defamation of character, and/or improper recording of private communications for improper use and disclosure.

[2] In her complaint, Ms. Phillips also alleged Florida ATF Agents Richard Coes and Hugh O'Connor disclosed or otherwise assisted Agent Bell and Mr. Lluberes in disclosing the contents of the seized recordings to the media and/or other private persons in Colorado. However, because she voluntarily dismissed her claims against them we need not address them on appeal.

Apt. App. at 44 (¶ 20). In implicating Agent Bell and Mr. Lluberes in violation of the Act, she alleged that "[b]y virtue of their employment as special agents with the ATF Bureau, [Appellants] knew or had reason to know that the seized recordings of [her] oral communications had been improperly and illegally intercepted [by Mr. Young] under both the federal and Florida wiretap statutes."[3] *Id.* at 45 (¶ 25).

Appellants moved to dismiss under Rule 12(b)(6) and qualified immunity grounds, arguing the complaint's factual allegations were too conclusory to state a claim, the actions alleged were not unlawful, and, even if they were, a reasonable officer in their positions would not have known so when the conduct occurred. The district court dismissed Ms. Phillips's Fourth Amendment claims, reasoning she possessed alternative claims for damages under the Federal Wiretap Act. However, it declined to dismiss her allegations concerning violations of the Federal Wiretap Act, concluding it was not evident whether the Act's "one-party consent" exception foreclosed her claims because it was not clear if Mr. Young had a criminal or tortious purpose in making the recordings and if Appellants knew of that purpose. In addition, the district court held the alleged violations of the Federal Wiretap Act were clearly established and, in so doing, singularly

---

[3] While Ms. Phillips's complaint mentions the Florida wiretap statutes, Appellants point out that the Florida statutes have not been raised as an issue on appeal. We agree, and therefore decline to address them in this appeal.

relied on *Berry v. Funk*, 146 F.3d 1003 (D.C. Cir. 1998), to explain its holding.

This appeal follows, in which Appellants again contend they are entitled to dismissal of the complaint on sufficiency and qualified immunity grounds. First, they argue Ms. Phillips's bald assertions Mr. Young recorded the conversations for a criminal or tortious purpose and that Appellants knew or had reason to know of his purpose merely because of their ATF positions, are conclusory and fail the "plausibility standard" required for a denial of their motion to dismiss. In making this contention, they point out other plausible noncriminal and nontortious reasons may have existed as to why Mr. Young recorded the conversations, including creating a bargaining chip with prosecutors in the event of his arrest or protecting himself from any efforts by Ms. Phillips to either pin the murder solely on him or cause him harm because of his knowledge of her participation in the murder.

In addition, Appellants argue they are entitled to qualified immunity from Ms. Phillips's claim they violated the Federal Wiretap Act. In so doing, they assert any use of the recorded conversations by Agent Bell in the course of his investigatory activities, including their use in support of the search warrant, meets the Act's law enforcement exception. Next, they claim no violation of the Act occurred regarding distribution of information to the news media or private

citizens because: (1) that information was already public, based on unsealed affidavits supporting the search warrant for Ms. Phillips's home; and (2) distribution of "public information" under the Act's statutory history is not a violation of the Act. Finally, they argue that, even if the complaint adequately states a violation of the Federal Wiretap Act, the district court erred in not granting their motion to dismiss because the conduct of Agent Bell and Mr. Lluberes was not contrary to clearly established law, as demonstrated by the facts: (1) the law is unsettled regarding what law enforcement officers may legally do with information they innocently obtain from private parties who have unlawfully intercepted it; and (2) different courts of appeals have reached conflicting conclusions about whether 18 U.S.C. § 2517(1) and (2) and § 2515 of the Federal Wiretap Act incorporate a clean-hands exception.[4]

### III. Jurisdiction, Standard of Review, and Sufficiency of Complaint

As a preliminary matter, the parties agree "[w]e have jurisdiction to hear appeals of the denial of qualified immunity when they turn on an issue of law."

---

[4] In their appeal brief, Appellants also state newspaper accounts suggest that, following the district court's decision, Ms. Phillips was indicted in Arizona for the 1996 murder of her ex-husband but fled the country and remains abroad. While they do not raise the issue of the "fugitive disentitlement doctrine" on appeal, they note they may raise such a defense in any further district court proceeding as grounds for dismissal. Because Appellants have not raised this issue on appeal or provided sufficient legal argument and citation of authority in support thereof, we decline to address it.

*Eaton v. Meneley*, 379 F.3d 949, 952 (10th Cir. 2004). Turning to our standard of review and applicable legal principles involving motions to dismiss, we review *de novo* a district court's denial of a motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009); *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (2007). "We assume the truth of all well-pleaded facts in the complaint, and draw reasonable inferences therefrom in the light most favorable to the plaintiff[]." *Dias*, 567 F.3d at 1178 (alteration added). This assumption, however, is inapplicable when the complaint relies on a recital of the elements of a cause of action supported by mere conclusory statements. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).

In addition, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted" under Rule 8(a)(2). *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted), *cert. denied*, ___ S. Ct. ___, 2010 WL 154973 (U.S. Jan. 19, 2010) (No. 09-549). While, generally, only the complaint and its allegations are considered in a motion to dismiss, documents referred to in the complaint may be considered at

the motion-to-dismiss stage if they are "central to the plaintiff's claim" and their authenticity is undisputed. *Alvarado*, 493 F.3d at 1215. Accordingly, in this case, we will generally consider the search warrant and supporting affidavits referenced in the complaint which summarize the contents of the recordings because they are central to Ms. Phillips's claims, and their authenticity is undisputed.

In reviewing a motion to dismiss, it is important to note "Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008). In the past, we "generally embraced a liberal construction of [this] pleading requirement," and held "a complaint containing only conclusory allegations could withstand a motion to dismiss unless its factual impossibility was apparent from the face of the pleadings ...." *Id.* However, the Supreme Court has recently "clarified" this standard, stating that "to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Id.* at 1247 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, so that "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just

speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247. Under this standard, "a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Smith*, 561 F.3d at 1098. Therefore, a plaintiff must "frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).

On the other hand, we have also held "granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias,* 567 F.3d at 1178 (quotation marks and citation omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

In discussing the sufficiency of a complaint's allegations, we look to two Supreme Court decisions, *Twombly* and *Iqbal*, which provide the determinative test for whether a complaint meets the requirements of Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) for assessing whether it is legally sufficient to state a claim for which relief may be granted. In *Twombly*, the Supreme Court considered a class action complaint alleging a conspiracy to restrain trade by

communication carriers. 550 U.S. at 548-51. As previously noted, it held a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins*, 519 F.3d at 1247. The *Twombly* Court explained this "does not impose a probability requirement at the pleading stage," but "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" misconduct required for relief. 550 U.S. at 556. As a result, the Court pointed out the complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). It concluded a "bare assertion" of the elements required to make a claim is not enough, but a claim needs "some further factual enhancement" to get it from "possibility" to the requisite "plausibility" required for relief. *Id.* at 556-57.

The *Twombly* Court applied these principles when considering the class action complaint's allegation asserting the defendants:

> engaged in a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets by, among other things, agreeing not to compete with one another and to stifle attempts by others to compete with them and otherwise allocating customers and markets to one another ....

-11-

*Id.* at 551 & n.2, 564; *Iqbal*, 129 S. Ct. at 1950. It determined this and the other allegations in the complaint were "merely legal conclusions" for claiming a legal conspiracy, which, without additional allegations of "action or inaction," failed to assert facts sufficient to state a claim for relief "plausible on its face." *Twombly*, 550 U.S. at 564-70. Following *Twombly*, we determined that "plausibility," as used by the Supreme Court, referred to the scope of the allegations in a complaint, and "if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247 (quotation marks and citation omitted).

Following *Twombly*, the *Iqbal* Court considered a Pakistani Muslim pretrial detainee's complaint alleging government officials, following the September 11, 2001 terrorist attacks, unconstitutionally arrested and detained him under restrictive or harsh conditions based on his race, religion, or national origin. *See* 129 S. Ct. at 1939. In addressing the sufficiency of Mr. Iqbal's complaint, the Supreme Court discussed the two working principles underlying *Twombly*. First, it noted "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable" to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements ...." *Id.* at 1949. Second, it pointed out "only a complaint that states a plausible claim for relief survives a

-12-

motion to dismiss," and that "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. It further explained that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has merely made an *allegation*, "but it has not *shown* that the pleader is entitled to relief." *Id.* (emphasis added) (alteration, quotation marks, and citation omitted).

In addressing the first principle, the Supreme Court considered Mr. Iqbal's allegation government officials "knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest" and that one of the defendants was "the principle architect of this invidious policy," while the other was "instrumental in adopting and executing it." *Id.* at 1951 (quotation marks and citations omitted). The *Iqbal* Court determined these were "bare assertions ... [that] amount to nothing more than a 'formulaic recitation of the elements' of a constitutional ... claim" and that the allegations were "conclusory and not entitled to be assumed true." *Id.* (quoting *Twombly,* 550 U.S. at 555).

With regard to the second *Twombly* principle, the *Iqbal* Court looked at the

-13-

complaint's factual allegations and concluded, if taken as true, they were consistent with discrimination based on race, religion, or national origin. *Id.* However, it determined the more likely or plausible explanation for the defendants' conduct was based on the nondiscriminatory intent of directing law enforcement to arrest and detain individuals because of their suspected link to the attacks, which, although producing a disparate, incidental impact on Arab Muslims, was not a policy intended to target either Arabs or Muslims. *Id.* As a result, it determined the allegations in Mr. Iqbal's complaint, even if inferencing purposeful, invidious discrimination, did not "plausibly establish" the alleged discrimination. *Id.*

## IV. Applicable Statutory Scheme

Having outlined *Twombly, Iqbal*, and other principles involving the sufficiency of a complaint's allegations, we turn to the statutory structure on which Ms. Phillips bases her claim and the elements she must plead to state such a claim. The Federal Wiretap Act prohibits, with specified exceptions, both: (1) the intentional interception of "any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a); and (2) the intentional disclosure or use of the contents of any such illegally intercepted communication if the persons who disclose or use it did so "knowing, or having reason to know," the communication was intercepted in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(c) and (d). While

-14-

§ 2511(1)(c) and (d) prohibit such intentional disclosure or use of any illegally intercepted communication, the legislative history of the Act states § 2511(1)(c) and (d) were not intended to apply to "[t]he disclosure of the contents of an intercepted communication that had already become 'public information' or 'common knowledge.'" S. Rep. No. 90-1097, at 4 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 2112, 2181.

In addition, one of the explicit exceptions to the Act's prohibition against interception of communications involves the "one-party consent" rule. *See* 18 U.S.C. § 2511(2)(d). Under this exception, interception of a communication by or with the consent of a party to the communication is not unlawful, unless the interception is "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* Other exceptions are specific to "investigative or law enforcement officer[s]." 18 U.S.C. § 2517. Under § 2517(1), any officer "who, by any means authorized" by the Federal Wiretap Act, obtains knowledge of an intercepted communication, may "disclose" it to another such officer "to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure." Similarly, an officer who, by means "authorized" by the Act, obtains knowledge of the contents of an intercepted communication may "use" it "to the extent such use is appropriate to the proper performance of his

-15-

official duties." 18 U.S.C. § 2517(2). The Federal Wiretap Act also provides "good faith" defenses to civil liability, including certain requests of an investigative or law enforcement officer or for reliance on "a court warrant or order, a grand jury subpoena, a legislative authorization, or a statutory authorization." 18 U.S.C. § 2520(d).

## V.  Discussion of Issues

### A.  Sufficiency of Allegations

Applying *Twombly*, *Iqbal*, and the other applicable principles presented here, we look at the instant complaint to see whether it includes the necessary elements for a cause of action as well as alleges facts sufficient to survive a motion to dismiss. As discussed, the one-party consent exception allows interception of a communication by or with the consent of a party to the communication but prohibits an interception "for the purpose of *committing any criminal or tortious act ....*" 18 U.S.C. § 2511(2)(d) (emphasis added). In her complaint, Ms. Phillips alleges Mr. Young recorded her:

> oral telephone communications without [her] knowledge and prior consent specifically for the purpose of *committing a criminal or tortious act*, including without limitation, invasion of privacy, extreme and outrageous conduct, intentional infliction of emotional distress, defamation of character, and/or improper recording of private communications for improper use and disclosure.

Apt. App. at 44 (¶ 20) (emphasis added).

Other than providing the essential elements of the Act by claiming Mr. Young committed a "criminal or tortious act" and citing a string of possible scenarios in a conclusory fashion, it is evident the complaint offers little in terms of factual allegations or "further factual enhancement." Instead, as in *Iqbal*, we are provided "a 'formulaic recitation of the elements' of a ... claim" where the allegations are "conclusory" and therefore "not entitled to be assumed true." 129 S. Ct. at 1951 (quoting *Twombly,* 550 U.S. at 555).

However, even if we view the facts in Ms. Phillips's complaint as true and, thus, in a light most favorable to her, the complaint also fails to meet the plausibility requirement. Ms. Phillips's recitation of the statutory elements and string of possible reasons for Mr. Young's recording of their conversations is "so general that [it] encompass[es] a wide swath of conduct," *Robbins*, 519 F.3d at 1247, and lacks the necessary factual enhancements to get it from the "possibility" of misconduct to a "plausibility" of such misconduct required for relief. *Twombly,* 550 U.S. at 557. This is because disclosure of the recordings' contents for the purposes Ms. Phillips claims, while possible, would have clearly inculpated Mr. Young in the crime of murdering her ex-husband. As a result, it is fairly implausible he would use such self-damning information for the purposes she contends, including invading her privacy, intentionally inflicting emotional distress, or defaming her character.

-17-

As the government points out, more plausible reasons exist for Mr. Young making the recordings, including to protect himself against any future conduct by Ms. Phillips in implicating him alone in her husband's murder. In the event Ms. Phillips did implicate him or he was later arrested, it is also plausible he sagaciously made the recordings to provide himself leverage with the government for a reduced sentence if he assisted in proving Ms. Phillips's participation in the murder. It is also possible he made the recordings for the purpose of ensuring she paid him for the murder he committed, which, admittedly, amounts to extortion or other criminal conduct, but which is not alleged in the complaint. Thus, while Ms. Phillips's complaint mentions certain possible reasons for Mr. Young making the recordings, none of her alleged facts take us beyond pure speculation to plausibility. Considering the circumstances another way, we are provided no additional factual allegations to support Ms. Phillips's contention Mr. Young made the recordings to invade her privacy, intentionally inflict emotional distress, or defame her character, so we are without sufficient "fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the type of misconduct for which she requests relief. *Twombly*, 550 U.S. at 556.

Even if we assume Mr. Young made the recordings "for the purpose of *committing a criminal or tortious act*," the Act requires that those, such as the Appellants, who intentionally disclose or use the contents of any such illegally

-18-

intercepted communication, do so *"knowing or having reason to know"* the communication was intercepted in violation of the Act. 18 U.S.C. § 2511(1)(c) and (d) (emphasis added). We have said that in asserting the material elements under these provisions a complaint must allege the defendants knew: "(1) the information used or disclosed came from an intercepted communication, and (2) *sufficient facts concerning the circumstances of the interception* such that the defendant[s] could, with presumed knowledge of the law, determine that the interception was prohibited in light of" the Act. *Thompson v. Dulaney*, 970 F.2d 744, 749 (10th Cir. 1992) (emphasis added).

In this case, Ms. Phillips alleges that "[b]y virtue of their employment as special agents with the ATF Bureau, [Appellants] knew or had reason to know that the seized recordings of [her] oral communications had been improperly and illegally intercepted" by Mr. Young under the Federal Wiretap Act. Apt. App. at 45 (¶ 25). However, like the allegations in *Iqbal* that one of the defendants was "the principle architect of [an] invidious policy" and another was "instrumental in adopting and executing it," 129 S. Ct. at 1951, this allegation is conclusory because Ms. Phillips points to no fact other than the Appellants' positions of employment for the proposition they knew or should have known of Mr. Young's alleged misconduct or of the "circumstances of the interception." *Thompson*, 970 F.2d at 749. Nothing in the complaint indicates either Agent Bell, who was

-19-

located in Arizona, or Mr. Lluberes, who was located in Washington, D.C., were involved in Mr. Young's Florida arrest and interview, or the Broward County search of four locations resulting in discovery of the tapes. Merely because one holds a law enforcement position does not establish he knew the criminal intent of someone he has never met or investigated. The complaint similarly provides no additional material facts concerning the circumstances of the interception to conclude Appellants could somehow determine Mr. Young recorded the conversations for the purpose of "committing a criminal or tortious act." Instead, given the plausibility that Mr. Young would not incriminate himself with the recordings, we cannot agree with Ms. Phillips's contention Appellants, merely because of their positions with ATF, knew or should have known that Mr. Young recorded their conversations for the purpose of "committing a criminal or tortious act."

While we generally do not rely on information outside of a complaint's allegations, none of Ms. Phillips's other pleadings or allegations persuade us of the plausibility of her allegations. Specifically, Ms. Phillips stated in another pleading and now on appeal that Mr. Young was known to be a fugitive and wanted in Colorado for fraud crimes and that the only reason she could "fathom for [Mr.] Young's surreptitious recordings is that he planned to use the tapes against her for any number of illegal purposes." Apt. App. at 111. But these

facts and her assumption are only speculation as to his reasons for making the recordings. Similarly, during oral argument on appeal, her counsel contended excerpts of the recordings, garnered from the affidavits in support of the search warrant, suggested Mr. Young had a nefarious purpose of extortion in recording their conversations. But, again, these allegations are outside the complaint and, without more factual enhancement, appear conclusory or speculative. Thus, for all of the reasons provided, Ms. Phillips has failed to "nudge" her claims "across the line from conceivable to plausible in order to survive a motion to dismiss." *Smith*, 561 F.3d at 1098.

## B. Qualified Immunity

Having determined Ms. Phillips's claims are insufficient to state a claim for relief for the purpose of surviving Appellants' motion to dismiss, we need not address the issue of qualified immunity[5] raised by Appellants, including: (1) whether Agent Bell allegedly violated the Federal Wiretap Act by disclosing the

---

[5] Once a defendant asserts the qualified immunity defense to a substantive due process claim, the burden shifts to the plaintiff to establish: (1) the defendant's conduct violated a statutory or constitutional right, and (2) the law governing the conduct was clearly established at the time of the alleged violation. *See Eaton*, 379 F.3d at 954; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In determining whether the right was clearly established, "[t]he relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "A plaintiff can demonstrate a constitutional right is clearly established by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Anderson v. Blake*, 469 F.3d 910, 914 (10th Cir. 2006).

-21-

recordings to other law enforcement officers, using them in support of the search warrant, or allegedly disclosing them to a private citizen during an investigative interview;[6] or (2) whether the law governing his or Mr. Lluberes's conduct was clearly established at the time of the alleged violation. But, even if we elected to consider qualified immunity and applied it here, it is highly doubtful Ms. Phillips could prevail in carrying her burden to show the Appellants' conduct violated a statutory or constitutional right with regard to the disclosure of alleged "public documents" regarding the contents of the seized recorded oral communications, which, according to the parties, are the warrant and affidavits in support thereof.

While counsel for Ms. Phillips conceded at oral argument that the complaint alleges the disclosure of "public documents," he also pointed out that, typically, affidavits and/or search warrants are not available to the public. However, as previously discussed, we generally consider only the allegations contained in a complaint in considering the denial of a motion to dismiss, which, here, clearly alleges disclosure of "public documents." Additionally, as

---

[6] As previously discussed, the Federal Wiretap Act provides certain law enforcement exceptions for use or disclosure of such recordings. While Ms. Phillips acknowledges at least two other circuits apply a "clean hands approach" to these provisions so law enforcement officers may disclose the contents of intercepted recordings to obtain and execute a warrant when they played no part in the unlawful private interception, she suggests this circuit should reject such an approach, as at least two other circuits have done. However, having disposed of this appeal on the sufficiency of the allegations of the complaint, we decline to address this issue.

Appellants contend, the legislative history of the Federal Wiretap Act points out the evident – § 2511(1)(c) was not intended to apply to "[t]he disclosure of the contents of an intercepted communication that had already become 'public information' or 'common knowledge.'"  S. Rep. No. 90-1097, at 4 (1968), *as reprinted in* 1968 U.S.C.C.A.N. 2112, 2181.  As a result, Ms. Phillips's allegation of disclosure of public documents is seemingly insufficient to allege a violation of the Act.

## VI.  Conclusion

For the reasons articulated herein, we reverse the district court's denial of Appellants' motion to dismiss and remand for further proceedings consistent with this opinion.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge