**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARIO WILLIAMS,

Plaintiff-Appellant,

v.

ERIC FRANKLIN, Warden;
MARTY SIRMONS; SGT. SUTER;
J. PARKER,

Defendants-Appellees.

No. 08-7037
(D.C. No. 6:06-CV-00460-JHP-SPS)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **EBEL** and **GORSUCH**, Circuit Judges.

---

Plaintiff Mario Williams, an inmate in the Oklahoma State Penitentiary

("OSP"), appeals the district court's dismissal of this 42 U.S.C. § 1983 action for

failure to exhaust administrative remedies under the Prison Litigation Reform Act

("PLRA"), 42 U.S.C. § 1997e(a). We agree with the district court as to two of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Mr. Williams's claims but conclude his Eighth-Amendment claim was properly exhausted. Because that claim plainly lacks merit, however, we exercise our jurisdiction under 28 U.S.C. § 1291 to AFFIRM.

I.

A.

The PLRA's exhaustion requirement dictates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Kikumura v. Osagie*, 461 F.3d 1269, 1281 (10th Cir. 2006) (quotation omitted), *abrogated on other grounds by Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008).

Proper exhaustion under the PLRA contemplates full compliance with all agency deadlines, including, as relevant to this appeal, the deadlines enumerated in a prison's grievance procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules"). Thus, we have held that "a claim that has been properly rejected by the prison grievance system on procedural grounds [such as untimeliness] should be dismissed from the plaintiff's complaint with prejudice."

*Kikumura*, 461 F.3d at 1290. The PLRA does not, however, require complete exhaustion. Therefore, if a prisoner brings an action asserting both exhausted and unexhausted claims, the district court should dismiss the unexhausted claims and proceed with the rest. *Jones v. Bock*, 549 U.S. 199, 220-24 (2007).

B.

OSP's Policy and Operations Manual sets forth a grievance system for inmates who seek to challenge their conditions of confinement. Initially, an inmate must attempt to resolve the issue informally by talking to an appropriate staff member. Thereafter, he may initiate a complaint by completing and submitting a short form entitled a Request to Staff ("RTS"). "The [RTS] must be submitted within 7 calendar days of the incident" about which the inmate complains. R. at 121. The rules require prison staff to respond to the RTS in writing, informing the inmate of any action taken and applicable department procedures. If the inmate is not satisfied with the response, he may then file a formal grievance. This requires the submission of an Inmate/Offender Grievance Report Form, along with the RTS, to the reviewing authority. The deadline to submit a formal grievance is fifteen calendar days from the date of the incident or the date of the response to the RTS, whichever is later. In addition, the RTS must have been timely submitted.

In responding to the grievance, the reviewing authority first determines whether the grievance was timely, and if not, whether to handle it as a

-3-

"sensitive/emergency" grievance. *Id.* at 124. "The reviewing authority will either grant or deny the grievance in whole or in part, and if granted will fashion the appropriate remedy and due date." *Id.* at 125. If the grievance is denied, an inmate with proper grounds may appeal to the administrative review authority or chief medical officer, whose decision is final. At this stage, the inmate will have exhausted all internal administrative remedies for purposes of the PLRA.

## II.

With this framework in mind, we review the dismissal of Mr. Williams's claims de novo. *Kikumura*, 461 F.3d at 1282.

## A.

Count I concerns the loss of Mr. Williams's fan. On March 16, 2006, he was transferred from the Oklahoma State Reformatory to OSP. Upon his arrival, he noticed his fan was not among his personal items. He submitted at least two RTSs complaining that his fan had been lost or stolen. After receiving unsatisfactory responses, he filed a formal grievance. The reviewing authority denied relief in part because it found he had failed to submit a timely RTS. This decision was affirmed by the administrative review authority. Mr. Williams then filed this lawsuit, alleging a deprivation of his property without due process.

The deadline for Mr. Williams to file an RTS concerning the loss of his fan was March 23, 2006, seven calendar days from his arrival at OSP. He did not file the first RTS until April 4. Accordingly, the prison properly rejected this

complaint on procedural grounds, and the district court was correct to dismiss count I for failure to exhaust under the PLRA. *Woodford*, 548 U.S. at 90-91; *Kikumura*, 461 F.3d at 1290.

B.

In count II, Mr. Williams claims his Eighth-Amendment rights were violated when he was assaulted by defendant Bradley Suter on July 28, 2006, and subsequently denied adequate medical care. On July 31, he submitted an RTS concerning the incident. Crysta Pink responded on behalf of the prison on August 3, stating that the incident had been documented. She noted that Mr. Williams had been seen by medical staff, who reported no injuries, and also that he was seen boxing and running in the exercise yard on August 2. Dissatisfied with this response, Mr. Williams submitted a grievance-report form on August 14. The reviewing authority denied the grievance on August 29 based on Ms. Pink's response. Mr. Williams filed a final appeal on September 6.

On September 8, the administrative review authority returned the appeal unanswered, explaining in a boilerplate letter that the grievance was "out of time from the date of response to request to staff until filing of grievance with reviewing authority." R. at 157. This was incorrect. The response to Mr. Williams's RTS is dated August 3. He filed his grievance on August 14, well within the fifteen-day deadline set forth in OSP's procedures. Accordingly, it is clear Mr. Williams complied with the requisite administrative deadlines and his

obligations under § 1997e(a). The district court therefore erred in dismissing his Eighth-Amendment claim for failure to exhaust.

We nonetheless decline to reinstate this claim, as there is no record support for Mr. Williams's contention that he was seriously injured or in need of medical care as a result of the alleged assault. *See Dummar v. Lummis*, 543 F.3d 614, 618 (10th Cir. 2008) ("We may affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.") (quotation omitted). The incident reports and medical records submitted with the *Martinez*[1] report and defendants' motion for summary judgment confirm that Mr. Williams was touched by Officer Suter on July 28. Whether he was tickled, as Officer Suter claims, or touched in some other fashion is, we suppose, a subjective determination. The medical reports, however, including nurse Mary Reasoner's notes made right after the incident, are not subject to interpretation. She described Mr. Williams's injury as a "speck" on his left arm the size of a "pin head," R. at 187, which is consistent with defendants' description of the incident as a brief tickling episode. Mr. Williams was later seen by Dr. R. Doyle Stewart, whose examination notes likewise reflect no more than trivial complaints.

---

[1] See *Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978) (sanctioning district-court practice of ordering prison officials to conduct an investigation into prisoner's claim and prepare special report before answering complaint).

"[P]rison officials violate the Eighth Amendment if their deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Kikumura*, 461 F.3d at 1291 (quotation omitted). The threshold requirement for such a claim is the showing of a harm "'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering[.]" *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). Despite Mr. Williams's claims of serious injury, all of the evidence, including the notes from the examining nurse and doctor, points to the conclusion that he suffered minor injuries as a result of horseplay with defendant Suter. Officer Suter may have deserved the administrative reprimand he received for his part, but under the circumstances of this case, he may not be held liable under § 1983 and the Eighth Amendment.

## C.

Finally, in count III, Mr. Williams accuses defendants of violating his First-Amendment rights by consistently denying him permission to attend Islamic services. In August 2006, he was transferred from the A unit to C unit. He immediately submitted an RTS requesting that the C unit begin offering the Islamic congregational prayer, Jumu'ah, on Friday afternoons. The prison responded to the RTS on August 22, stating that it was compiling a list of Muslim inmates but that the service would be timed to accommodate prison-security

-7-

concerns. In September, Mr. Williams filed two additional RTSs concerning who should lead the weekly prayer under Islamic law. He received responses to those RTSs on September 18. The parties dispute whether Mr. Williams was ever actually allowed to attend Jumu'ah. By his own admission, however, he did not file a grievance with respect to this issue until October 6, more than fifteen days after receiving a response to his last RTS. The reviewing authority denied the grievance as untimely under its grievance procedures and declined Mr. Williams's request to treat it as an emergency. Having reviewed the record, we agree that Mr. Williams is procedurally defaulted from asserting this claim. It was therefore properly dismissed under *Woodford* and *Kikumura*.

The judgment of the district court is AFFIRMED, and all pending motions are DENIED.

Entered for the Court

David M. Ebel
Circuit Judge