**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 14, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARIO WILLIAMS,

    Plaintiff - Appellant,

v.

TIM WILKINSON; KATHY MILLER;
TERRY UNDERWOOD; ANGELA
BRANNON; LEWIS; C/O KIDWELL,

    Defendants - Appellees.

No. 15-7075
(D.C. No. 6:13-CV-00015-RAW-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

    Mario Williams, an Oklahoma inmate proceeding pro se, sued defendants in their individual and official capacities under 42 U.S.C. § 1983, alleging violations of procedural due process, the First Amendment, and the Eighth Amendment. The district court dismissed defendant Angela Brannon without prejudice because she was never served. It dismissed the remaining defendants, concluding that Mr. Williams

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

had failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). The court also imposed a strike against Mr. Williams under 28 U.S.C. § 1915(g). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

### A. *Legal Background*

### 1. Exhaustion Under the PLRA

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 268, 211 (2007).[1]

"Exhaustion of administrative remedies serves two main purposes." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). The first is to protect agency authority, both by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and by discouraging disregard of agency procedures. *Id*. (internal quotation marks omitted). The second is to promote efficiency by permitting claims, where possible, to be settled at an

---

[1] The Supreme Court recently held there is no "special circumstances" exception to the PLRA exhaustion requirement. *See Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850 (2016).

administrative level; and, even where this is not possible, to develop "a useful record for subsequent judicial consideration." *Id*. (internal quotation marks omitted).

Two aspects of the exhaustion requirement are pertinent here.

First, the administrative grievance must have alleged the same facts as the court complaint. A court claim that was not alleged at the administrative level could not have been exhausted there. Without this requirement, the prison would not have had a chance to correct an error. *See id*. at 94 ("Requiring proper exhaustion . . . gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors."). Although "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim . . . it is the prison's requirements . . . that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

Second, the plaintiff must follow the prison's grievance procedures. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

We review de novo a district court's finding that an inmate failed to exhaust his administrative remedies. *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010).

2. **Oklahoma Offender Grievance Policy**

The Oklahoma Department of Corrections (ODOC) has an Offender Grievance Policy (OGP).  In general terms, the policy requires the inmate to (1) speak informally with a case manager or staff member; (2) submit a request to staff (RTS) ("Informal resolution requires communicating with staff, including submitting a 'Request to Staff',' if the complaint is not resolved.  The informal resolution process precedes submitting a grievance." OGP IV, R., Vol. 1 at 217); (3) file a grievance; and (4) appeal the denial of the grievance.  The RTS must state "completely, but briefly the problem," and the "statement must be specific as to the complaint, dates, personnel involved and how the offender was affected."  OGP IV(B), *id*. at 218. "[O]nly one issue or incident is allowed per form."  *Id*.  The four steps constitute the grievance process under the OGP.  After trying to resolve the matter informally at steps one and two, step three is the point at which the grievance is filed.

B. *Prison Proceedings*

According to Mr. Williams, on August 22, 2012, Corrections Officer Kidwell slammed his left elbow in his prison cell food port opening, causing serious injuries. This incident led to four grievances and a disciplinary proceeding.

1. **Grievance 496**

After completing step one (informal discussion) and step two (submit an RTS) of the OGP process, Mr. Williams filed his first grievance, No. 2012-1001-00496-G ("No. 496"), on August 22, 2012.  It demanded immediate medical treatment for the elbow injury allegedly inflicted by Officer Kidwell.  He asked to see a doctor as soon

as possible and to have photographs taken of his injury. *See* R., Vol. 2 at 172. The grievance coordinator spoke with Mr. Williams that same day and scheduled an appointment with medical services and also arranged for photographs. *Id*. at 171.

2. **Grievance 505**

On August 29, 2012, after completing steps one and two of the OGP process, Mr. Williams filed his second grievance, No. 2012-1001-00505-G ("No. 505"), against Warden Tim Wilkinson concerning the incident with Officer Kidwell: "On [August 22], I was physically assaulted by C/O Kidwell by slamming my [left] elbow in the food port with force. I received injuries to my arm." *Id*. at 175. He asked the warden to "[p]lease investigate this and rectify the issue." *Id*. The warden responded the same day and told Mr. Williams that "[t]his matter is under investigation and appropriate action will be taken." *Id*. at 176. A formal response, signed by the warden a few days later and provided to Mr. Williams, stated: "The offender's complaint is that he was physically assaulted by C/O Kidwell on 08/22/2012. The offender requested that the matter be investigated. The offender's request is GRANTED." *Id*. at 174. The response did not say what steps were or would be taken to "rectify the issue."

3. **Grievance 534**

Grievance No. 2012-1001-00534-G ("No. 534"), filed after steps one and two of the OGP process, concerned an RTS in which Mr. Williams claimed "Nurse Misconduct" against Ms. Brannon. *See id*. at 194. According to Mr. Williams, after the alleged assault by Officer Kidwell on August 22, 2012, he requested medical

treatment for his elbow injury, but "[t]he nurse (Ms. Brannon) came to my door and look[ed] through the window, ask[ed] a few questions and walk[ed] away without any treatment." *Id*., Vol. 1 at 29. The next day, he submitted the RTS to defendant Kathy Miller, a health services administrator. On September 11, 2012, Mr. Williams filed grievance 534, in which he complained there had been no response to the RTS. *See id*., Vol. 2 at 193.

On September 12, 2012, the grievance was returned as deficient for two reasons: (1) Mr. Williams failed to provide a "completed Request to Staff OP-090124D (R 5/11)," *id*. at 192, and (2) he had not waited thirty days for a response to his August 23 RTS, *id*.; *see* OGP IV(B), *id*., Vol. 1 at 218 ("If there has been no response in 30 calendar days of submission, the offender may file a grievance to the reviewing authority with evidence of submitting the 'Request to Staff' to the proper staff member.")

Mr. Williams was told he could either resubmit the grievance after September 23, or file a new grievance within ten days along with evidence that the RTS had been submitted on August 23. *See* OGP V(A), *id*. at 219 ("If the offender does not follow instructions as explained in this procedure and on the grievance forms, the grievance may be returned unanswered for proper completion. If allowed, the offender must properly re-submit the grievance within ten calendar days of receipt."). Mr. Williams chose the second option, resubmitting the grievance with a copy of the RTS on September 21, 2012, which was within the ten-day deadline.

On September 27, 2012, Terry Underwood, a grievance coordinator, sent Mr. Williams a memorandum informing him that he should have waited until September 23, 2012, to file a grievance seeking a response to his RTS or, in the alternative, he was required to provide evidence in his resubmitted grievance that he actually submitted the August 23 RTS to Ms. Miller. *See id.* at 62.[2] In particular, she wrote that a "copy of the Request to Staff to Kathy Miller was not evidence that you submitted it." *Id.* In her affidavit filed in district court, Ms. Underwood noted that "[t]he practice at our facility during [the relevant] time period was to utilize a receipt process or have staff sign a submitted Request to Staff acknowledging their receipt. Neither approach was apparently utilized by inmate Williams." *Id.*, Vol. 2 at 266. We understand this to mean that the prison thought Mr. Williams should have submitted a receipt that his RTS had been submitted or an acknowledgment on the RTS signed by prison staff.

Mr. Williams filed an appeal with the administrative review authority in which he argued that Ms. Underwood's memorandum "gave me no way to follow policy [without] violating either the '10 day resubmit' or '30 day non-response.'" *Id.*

_____

[2] Defendants submitted an affidavit from Ms. Underwood, which states in part: "During my research regarding this particular grievance, I also contacted . . . [Ms.] Miller to inquire if [she] had actually received the Request to Staff. [Ms.] Miller stated to me that she had not received it and had no record of it." R., Vol. 2 at 266. "Parties may, for example, submit affidavits in support of summary judgment. . . . Nonetheless, the content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (internal quotation marks omitted). Ms. Underwood's statement as to what Ms. Miller told her is inadmissible hearsay, and it was error for the district court to rely on it.

at 186.  He also questioned Ms. Underwood's decision to deny the grievance because he failed to submit "evidence" that he submitted the RTS to Ms. Miller on August 23, 2012.  His appeal was denied.

4. **Grievance 549**

The fourth grievance, No. 2012-1001-00549-G ("No. 549"), was filed after steps one and two of the OGP process, and concerned an RTS submitted to Warden Wilkinson on September 22, 2012, in which Mr. Williams explained that he had a conversation that day with  Jason Lewis about his adjustment review.[3]  According to Mr. Williams, he asked Mr. Lewis for the paperwork.  When Mr. Lewis told him he did not have it, Mr. Williams continued to press the issue.  The parties then exchanged words, after which Mr. Lewis demoted Mr. Williams from Level 4 to Level 1, citing his "'disrespectful behavior.'"  *Id*. at 208.  The RTS further explained Mr. Williams's belief that Mr. Lewis demoted him in "retaliation" for having complained about not receiving his paperwork.  *Id*.  The assistant warden responded to the RTS on September 25, and informed Mr. Williams that Mr. Lewis "states that you disrespected him and you were demoted due to your actions.  I support the decision of the unit team in this matter."  *Id*. at 207.

Mr. Williams filed grievance 549 on September 27, 2012, alleging "Retaliation."  *Id*. at 205.  According to Mr. Williams, he had submitted an earlier

---

[3] An "adjustment review" is a process that takes place every 120 days by a classification committee to determine an inmate's proper classification level.  *See* R., Vol. 1 at 188.

RTS to Warden Wilson about not having received his paperwork—"I had a conversation about this beforehand with C/M Grizzle, [illegible], Ms. Hoover, U/M Rankins and a 'RTS' to the Warden (#12-2425), trying to resolve the issue," *id*. at 206—and as pay back, Mr. Lewis "provoke[d] [the September 22] argument and unjustly demoted me," *id*. He asked to be promoted back to Level 4 and to stop any future retaliation. The initial response, dated October 1, 2012, stated that an investigation had determined that "CM Lewis documented in detail the details of the demotion and the demotion to Level 1 was approved by the Unit Team. The Grievant's request to be promoted back to Level 4 is denied." *Id*. at 204.

Mr. Williams appealed. On October 31, 2012, the reviewing authority remanded the grievance to the facility for further investigation and a revised response. *Id*. at 200. Ms. Underwood provided a revised response on November 7, 2012, in which she informed Mr. Williams that his RTS had not been submitted to the appropriate staff member and that he could not grieve more than one issue on a grievance form and told him that he could resubmit his grievance within ten days. *See id*. at 198. Mr. Williams appealed again. The administrative review authority denied the appeal because Mr. Williams did not follow Ms. Underwood's directions. *Id*. at 195.

5. **Disciplinary Proceeding 2448**

On September 12, 2012, the day after Mr. Williams filed grievance 534 against Ms. Brannon, he was charged in a disciplinary proceeding—No. 2012-1001-02448-D ("No. 2448")—with making a false statement. *See id*., Vol. 1 at 148. After he was

- 9 -

found guilty, he filed for due process review, arguing that (1) the misconduct claim was retaliation for filing grievance 534, (2) he was not permitted to present relevant documentary evidence, (3) the prison did not provide him with a written statement of the evidence used to determine his guilt, and (4) there was no evidence to support a finding of guilt. *Id*. at 144. The conviction was affirmed. Mr. Williams attempted to appeal, but each time his appeal was returned to him citing technical defects in his paperwork.

## C. *Mr. Williams's Court Complaint*

Because Mr. Williams is proceeding *pro se*, we construe his complaint "liberally" and hold him "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Although his complaint does not clearly sort out his grievances and match them to his claims, like the district court, we liberally construe Count 1 to allege a due process violation concerning No. 2448;[4] Count 2 to allege a First Amendment retaliation claim that is arguably linked to  grievance 534,  grievance 549, and misconduct proceeding 2448; and Count 3 to allege Eighth Amendment excessive force and inadequate medical treatment violations concerning grievances 496, 505, and 534.

---

[4] This claim includes Mr. Williams's contention that the photographs taken shortly following the elbow injury had disappeared and were not available at the disciplinary hearing.

## D. *District Court Order and Opinion*

In its Order and Opinion, the district court began by dismissing Nurse Brannon without prejudice because she had not been served. The rest of the court's opinion dismissed the three counts of the complaint against the remaining defendants. Although the court only briefly described the Count 1 due process claim without specifically explaining why it was dismissed, it appeared to dismiss all of the claims because Mr. Williams failed to procedurally exhaust certain grievances or the grievances that he did procedurally exhaust were different from the claims in his court complaint.

As to grievance No. 496 regarding emergency medical attention, the court said that "[w]hile the administrative remedies for this grievance were exhausted, none of plaintiff's constitutional claims in the complaint were exhausted by this grievance." R., Vol. 2 at 294. We understand the district court to have concluded that No. 496 did not allege claims that were alleged in the complaint.

As to No. 505 regarding the alleged assault by Officer Kidwell, the court said "this grievance did not exhaust the administrative remedies for the claims in plaintiff's lawsuit." *Id.* That is, it did not suffice to exhaust the excessive force claim in Count 3.

As to No. 534 alleging misconduct by Nurse Brannon, the court concluded Mr. Williams "did not exhaust[] any of the claims in this lawsuit through this grievance." *Id.* at 296. We note the only claim this grievance could have supported is the alleged denial of medical treatment in Count 3.

- 11 -

As to No. 549 regarding retaliation by Case Manager Lewis, the court said Mr. Williams "did not exhaust his administrative remedies as to any issues raised in this grievance." *Id*. at 297. That is, it was insufficient to exhaust the First Amendment retaliation claim against Lewis in Count 2.[5]

Further, the district court said that Mr. Williams had filed no grievances alleging denial of follow-up medical care and that he therefore had not exhausted his administrative remedies as to such claims. There are no grievances that are part of the record concerning the failure to provide follow-up treatment. Therefore, we agree with the district court that Mr. Williams failed to exhaust any such claims.

Finally, the district court did not specifically address whether Mr. Williams properly sought review of his objections regarding disciplinary proceeding No. 2448 and his associated allegations of retaliation against Ms. Brannon.

## II. **DISCUSSION**

This appeal concerns whether the four grievances and the disciplinary proceeding satisfied the exhaustion requirement to allow the complaint to proceed.

### A. *Grievance 496*

As to No. 496, the court concluded that "[w]hile the administrative remedies for this grievance were exhausted, none of [Mr. Williams's] constitutional claims in the complaint were exhausted by this grievance." *Id*. at 294. We have examined

---

[5] The First Amendment claim includes alleged retaliation by Ms. Brannon relating to the allegation that she initiated misconduct No. 2448 in retaliation for his grievance 534 concerning nurse misconduct.

Mr. Williams's complaint and agree that grievance 496 does not supply an administrative exhaustion predicate for any of his claims.

## B. *Grievance 505*

As to No. 505, the district court concluded that "this grievance did not exhaust the administrative remedies for the claims in plaintiff's lawsuit." *Id*. at 294. We are not clear whether the district court made this statement because (1) grievance 505's allegations were different from the Eighth Amendment excessive force claim alleged in Count 3, or (2) Mr. Williams had not procedurally exhausted this grievance. Either way, we think Mr. Williams exhausted his excessive force claim.

First, Mr. Williams alleged in Count 3:

> C/O Kidwell['s] . . . use of force was unreasonable, and excessive. . . . I did not violate any prison rules, so the[re] was no provocation to use any physical force. . . . C/O Kidwell use[d] unnecessary excessive force against me by slamming my elbow in the food port and causing a serious injury to my [left] elbow.

*Id*., Vol. 1 at 30-31, 34.

Defendants argue that Mr. Williams asked in grievance 505 only for an investigation, the request was granted, and he now seeks different relief in his complaint. But Mr. Williams's grievance also asked the prison to "rectify the issue." The prison regulations required Mr. Williams only to state the problem briefly, the date it occurred, the officer involved, and how he was affected. *See* OGP IV(B), *id*., Vol. 1 at 218. *See also Jones*, 549 U.S. at 218 (holding that the prison's requirements define the boundaries of proper exhaustion).

- 13 -

Grievance 505 met these requirements, which did not call on him to plead legal theories and specific remedies. It set forth allegations regarding Officer Kidwell's use of force. "If the [prison] wants inmates to provide specific types of information in their grievances, it should notify them of those requirements in advance rather than waiting until they have already completed the grievance process and filed a lawsuit." *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), as explained in *Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008).

Grievance 505 both complied with OGP requirements and also fulfilled the information-providing purpose of the exhaustion requirement. *See id.* at 1283-85 (holding that an inmate properly exhausts a claim if his grievance provides enough information regarding the nature of the alleged wrong to enable prison officials to investigate and address his complaint).

Second, on appeal, the parties do not appear to contest that grievance 505 was procedurally exhausted when the prison granted Mr. Williams's request to investigate the alleged assault. In his brief, Mr. Williams understands the district court as concluding that the "administrative remedies for [grievances 496 and 505] were exhausted. . . " Aplt. Br. at 7. The appellees do not dispute this view and instead understand the district court to have held that "none of the claims inmate Williams later brought forward to the District Court were exhausted by this particular grievance submission." Aplee. Br. at 8. This interpretation of the district court's opinion is consistent with the OGP, which provides for an appeal at step four of the

- 14 -

process but offers no mechanism for an appeal of a grievance that has been granted. *See* OGP VII(A), R., Vol. 1 at 222, (outlining the grounds on which an inmate can appeal). *See also Ross v. Cty. of Bernalillo*, 356 F.3d 1181, 1187 (10th Cir. 2004) ("Once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted. Prisoners are not required to file additional complaints or appeal favorable decisions in such cases."), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 268. Although we think the district court's order is not entirely clear as to whether it held that No. 505 was procedurally exhausted or whether it raised different claims from the excessive force claim in Mr. William's court complaint, based on our review of the OGP, the administrative record, and the parties' arguments on appeal, we conclude that grievance 505 sufficed to properly exhaust the excessive force claim asserted in Count 3.

## C. *Grievance 534*

Before Mr. Williams filed grievance 534 on September 11, 2012, he submitted a fully completed Request to Staff OP-090124D (R 5/11) on August 23.[6] *See id.*, at 53. Defendants refer to a "facility practice" to argue that Mr. Williams should have obtained a receipt for his RTS from Ms. Miller. But the prison's regulations, not "facility practice," define proper exhaustion, *see Jones*, 549 U.S. at 218, and nowhere

---

[6] We also note the lack a signature line in Form R 5/11 to acknowledge its receipt, or anything informing an inmate that he needs a receipt.

do they state that a copy of the RTS is insufficient to satisfy the evidence requirement. *See Kikumura*, 461 F.3d at 1285 ("If the [prison] wants inmates to provide specific types of information in their grievances, it should notify them of those requirements in advance rather than waiting until they have already completed the grievance process and filed a lawsuit."). And as we explained previously, the grievance was timely submitted. Thus, we conclude Mr. Williams exhausted grievance 534.

## D. *Grievance 549*

As to grievance 549, the district court concluded that Mr. Williams failed to exhaust his administrative remedies because he "chose not to follow the corrective guidance given him by the Grievance Coordinator and the DOC ARA." R., Vol. 2 at 297. The question is whether Mr. Williams complied with the regulations. We conclude that he did.

OGP IV(B) provides that "the offender must submit a 'Request to Staff' to the appropriate staff, generally unit staff, stating completely but briefly the problem." *Id*., Vol. 1 at 218. OGP IV(B) further provides that "only one issue or incident is allowed per form." *Id*.

On the "appropriate staff" requirement, the regulations do not state that an RTS cannot be submitted to the warden.[7] Defendants argue that because

---

[7] We note that Mr. Williams submitted the RTS and grievance 505 also to Warden Wilkinson, without any objection that the warden was not "appropriate staff."

- 16 -

Mr. Williams "is a knowledgeable inmate," he "was aware that issues regarding his classification level are properly first addressed to his housing unit staff team, such as his Unit Manager William Rankins." Aplee. Br. at 10. But the term "appropriate staff" is too vague to dismiss Mr. Williams's complaint simply because he submitted this grievance to Warden Wilkinson. *See Kikumura*, 461 F.3d at 1285 (holding that the prison should notify an inmate of the requirements in advance).

On the "single-issue"/"single-incident" requirement, the OGP IV(B) provides that "only one issue or incident is allowed per form." R., Vol. 1 at 218. The RTS raised only one issue concerning one incident—whether, on September 22, 2012, Mr. Lewis demoted Mr. Williams from Level 4 to Level 1 in "retaliation for" Mr. Williams "filing a 'RTS' to the Warden" about Mr. Lewis. *Id*., Vol. 2 at 208.

We conclude that Mr. Williams exhausted No. 549.[8]

### E. *Disciplinary Proceeding 2448*

The district court described the sequence of events surrounding misconduct proceeding 2448, which underlies Count 1 alleging procedural due process, but failed to address whether this claim was properly exhausted. The parties do not discuss No. 2448 on appeal. Nonetheless, because we cannot clearly determine the district court's reasons for dismissing this claim and because we are remanding the case for

---

[8] On remand, the district court should examine grievances 534 and 549 and compare them to the claims in Mr. Williams's court complaint to determine whether the claims are consistent with the issues raised in the grievances.

further proceedings, we consider it appropriate under the circumstances to remand this issue for further consideration.

## F. *Dismissal of Angela Brannon*

Mr. Williams argues the district court erred in dismissing Ms. Brannon without prejudice for failure to obtain service of process. There was no error. The initial summons was returned unexecuted because Ms. Brannon was not at the address provided by Mr. Williams. In response to an order to show cause, Mr. Williams asked the court to direct defendants to provide him with Ms. Brannon's last known address. The court ordered defendants to do so and they complied. But the summons was again returned unexecuted with a notation that Ms. Brannon was no longer at that address. As such, the court did not err in dismissing Ms. Brannon without prejudice. *See* Fed. R. Civ. P. 4(m) (if a defendant is not served, the court may dismiss an action without prejudice against that defendant).

## III. **CONCLUSION**

We affirm the district court's decision that the complaint did not contain the allegations in grievance No. 496. We reverse insofar as the court determined that No. 505 did not sufficiently describe the Eighth Amendment excessive force claim or that No. 505 was not exhausted. We also reverse the decision that Mr. Williams failed to exhaust his administrative remedies as to Nos. 534 and 549. We remand the due process claim to determine whether Mr. Williams exhausted that issue. Finally, we affirm the district court's decision to dismiss all claims against Ms. Brannon without prejudice.

We express no opinion on the merits of any of Mr. Williams's claims.  We reverse the imposition of a strike against Mr. Williams.[9]  The case is remanded for further proceedings consistent with this order and judgment.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge

---

[9] Even if we were not reversing the decision in part, we would nonetheless reverse the district court's decision to impose a strike.  Here, the court dismissed the claims against defendants "without prejudice for failure to exhaust administrative remedies."  R., Vol. 2 at 298.  But the court cannot impose a strike unless one of an inmate's claims is found to be frivolous, malicious, or does not state a claim for relief.  *See* 28 U.S.C. § 1915(g).  *See also Thomas v. Parker*, 672 F.3d 1182, 1184 (10th Cir. 2012).  The court made no finding on any of these grounds.